UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE WHITE,<br><br>        Plaintiff,<br><br>        vs.<br><br>CISCO SYSTEMS, INC,<br><br>        Defendant. | 07 Civ. 9288 (RPP) (THK)<br><br>COMPLAINT<br><br>ECF CASE<br><br>PLAINTIFF DEMANDS<br>A TRIAL BY JURY |

Plaintiff, Nicole White ("Ms. White or Plaintiff"), by and through her attorneys, The Ottinger Firm, complaining of defendant Cisco Systems, Inc., ("Cisco or Defendant"), alleges as follows:

### THE PARTIES

1. Nicole White is a citizen of New York. She has been employed by Cisco since April 22, 1996.

2. Cisco is a corporation organized under the laws of the State of California with headquarters in California. Cisco designs, manufactures, and sells IP-based networking and other products relating to the communications and information technology industry worldwide. Cisco has an office located in New York City.

### THE NATURE OF THE ACTION

3. This is a gender discrimination case brought under the Administrative Code of the City of New York § 8-101 *et seq.* ("New York City Human Rights Law").

4. Cisco discriminated against Ms. White because of her gender by marginalizing her achievements, penalizing her for having a child, making it impossible for her to do her job, punishing her for problems beyond her control and holding her to a different standard than her male colleagues. Ms. White's male colleagues were not subject to the same scrutiny as Ms. White and they received more favorable treatment than Ms. White because of their gender.

5. Cisco promoted scores of men who were equal to or less qualified than Ms. White while demoting Ms. White for pretextual reasons. The result is that after 11 years at Cisco, Ms. White has been demoted back to the same level she started at while her male colleagues have been promoted to higher levels earning more money and benefiting from career opportunities not available to Ms. White. Ms. White was treated differently than her male counterparts because of her gender.

**JURISDICTION AND VENUE**

6. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(a)(1), because the plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000.

7. As the Southern District of New York is the district where a substantial part of the events giving rise to the claim occurred, venue is proper within this District pursuant to 28 U.S.C. § 1391(a)(2). Prior to the commencement of this action, Ms. White served a copy of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel of City of New York in accordance with N.Y.C. Admin. Code §8-502(c).

8. Plaintiff will file a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"). When plaintiff receives a Right to Sue Notice, she will seek to amend the Complaint and add claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). The facts set forth are those relevant to that claim as well, and therefore there will be no prejudice to defendant by this procedure.

## FACTS

9. Ms. White joined Cisco on April 22, 1996 as an Account Manager.

10. On August 1, 1997 Ms. White was promoted to Global Account Manager.

11. On August 1, 1998 she was promoted to Senior Global Account Manager assigned to Citigroup.

12. On February 14, 1999, Ms. White gave birth to her child.

13. In August 1999, Ms. White asked to be promoted to the next level, Regional Manager for her account, Citigroup. Cisco denied her request for the promotion stating that because she recently gave birth she should be closer to her baby and was assigned to the Long Island region where she lived and she was removed from the Citigroup account. The transfer to Long Island and off of the Citigroup account was a significant set back to her career.

14. Ms. White's upward progression at Cisco stalled after the birth of her child and the consequential transfer to Long Island. In 2004 she was demoted to Global Account Manager, the position she held in 1997.

15. Meanwhile, Ms. White's male colleagues were promoted to higher positions at Cisco. Ms. White was equally or more qualified than her male colleagues who were promoted over her and who received more favorable treatment than her.

16. Ms. White was not given the same career opportunities that her male colleagues had.

17. In February 2006, Ms. White obtained her first promotion in seven years as she was promoted to Senior Global Account Manager, a position she previously held in 1998.

18. In March 2006, Ms. White was asked to manage the UBS account. UBS had a troubled history with Cisco due to unmet expectations on pricing and contract terms.

19. Ms. White was asked to repair Cisco's relationship with UBS and she created a plan that included discount pricing, a key area of concern for UBS.

20. Cisco management would not give Ms. White permission to offer reduced pricing to UBS even though this was critical to restoring the relationship. By withholding permission to offer discount pricing to UBS, Cisco management made it impossible for Ms. White to do her job and repair the relationship with UBS.

21. Ms. White was ultimately removed from the UBS account by her manager, Chris Augenstein who told her that "she had not moved the ball forward."

22. The man who replaced Ms. White on the UBS account was immediately given permission to offer discount pricing.

23. The Cisco unit in which Ms. White worked fostered a male oriented "boys club" culture that favored men. As an example of this culture, Cisco held a mandatory operations meeting at the "Catwalk Bar & Lounge" in New York City where women in

thongs and garter belts danced around poles on stage and served drinks and food. Approximately 80 men from Cisco and six women, including Ms. White, attended. Ms. White felt uncomfortable having a business meeting in this environment and believed that the selection of this location evidenced a lack of respect for the female employees. However, Ms. White knew she would be at a detriment if she did not attend.

24. On January 1, 2007, Ms. White was assigned to the AIG account with instructions to market Cisco's products and services directly to AIG's business units rather than going through AIG's technology department. This marketing approach runs the risk of antagonizing a company's technology leaders who typically manage these transactions.

25. In February 2007, Ms. White began raising concerns to her managers at Cisco that their explicit directive to go around AIG's technology and information department would not be effective because AIG was in the midst of a large consolidation push and had just hired a new Chief Information Officer. Ms. White stated that this approach would not result in sales and would strain Cisco's relationship with AIG.

26. Ms. White's managers told her not to worry about potential backlash from AIG.

27. In April 2007, as predicted by Ms. White, AIG complained that Ms. White was going around the technology department and trying to negotiate deals directly with AIG business units and said that this conduct was unacceptable and refused to conduct business with Cisco in that manner.

28. On July 31, 2007 Ms. White's manager, told her that she is at the "bottom of the stack ranking" and asked her to consider transferring to another department and

advised her that she would be put on a performance improvement plan. Ms. White's male colleagues, on the other hand, were praised and treated favorably for their attempts to go around a customer's technology department and were not penalized for it.

29. On August 3, 2007, Ms. White's managers told her that AIG asked to have her removed from the account.

30. On August 8, 2007, Cisco asked Ms. White to leave the company because she had been removed from two accounts and offered her a separation package consisting of four months compensation in lieu of being put on a performance plan. Ms. White declined the severance offer.

31. On August 22, 2007, Ms. White was demoted two levels to Account Manger, the position she initially held when she started at Cisco in 1996.

32. Ms. White currently holds the same title she had when she started at Cisco 11 years ago. Ms. White is extremely capable and qualified to hold high level positions at Cisco.

33. The overwhelming majority of those in Ms. White's unit who have not experienced sustained career growth are females while the overwhelming majority of those who have experienced sustained career growth are men. There is a substantial disparity in the selection process in Ms. White's unit that favors men and disfavors women.

## FIRST CAUSE OF ACTION

Gender Discrimination Under the Administrative Code

34. Ms. White hereby repeats and re-alleges each of the above-mentioned allegations as if fully set forth herein.

35. By the acts and practices described above, including but not limited to creating a work environment that favors men over women, Cisco discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of the Administrative Code.

36. Ms. White's positive performance was largely ignored and she was set up for failure by being denied the authority and support needed to do her job and was disciplined for results that were out of her control. Men, on the other hand, were given the support and authority that Ms. White was denied and the men therefore had a better chance of success.

37. Ms. White is a "person" under § 8-102(1) of the Administrative Code.

38. On information and belief, Cisco is an "employer" subject to the provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

39. Ms. White was disciplined for the same conduct that her male colleagues were rewarded for and she was held to a different standard than the men.

40. Although Ms. White was equally or more qualified than her male colleagues, she was held back, demoted and passed over for promotions on account of her gender as her male colleagues were overwhelmingly promoted higher up the ranks of the company.

41. As a result of Cisco's gender bias, Ms. White has suffered substantial damages, including lost wages and benefits, reputational damage and emotional distress in an amount to be determined at trial.

42. Upon information and belief, Cisco's discriminatory conduct was engaged in with malice and/or reckless indifference to Ms. White's protected rights. Ms. White is therefore entitled to punitive damages under the The New York City Human Rights Law.

43. Cisco is strictly liable for discrimination by its employees under N.Y. City Admin. Code § 8-107.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court enter an award:

(a) declaring the acts and practices complained of herein are in violation of the Administrative Code;

(b) enjoining and permanently restraining these violations of the Administrative Code;

(c) directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

(d) directing Defendant to place Plaintiff in the position she would be in but for Defendant's discriminatory and retaliatory treatment of her, and to make her whole for all earnings she would have received but for Defendant's discriminatory and retaliatory treatment, including, but not limited to, wages, bonuses, equity interests, pension and other lost benefits;

(e) directing Defendant to pay Plaintiff punitive damages as provided by the Administrative Code;

(f) directing Defendant to pay an additional amount to compensate Plaintiff for emotional distress caused by Defendant's unlawful conduct;

(g)     awarding Plaintiff such interest as is allowed by law;awarding Plaintiff her reasonable attorney's fees and costs, and

(h)     granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated: New York, New York
October 16, 2007

The Ottinger Firm, PC

By: _____
Robert W. Ottinger
19 Fulton Street, Suite 408
New York, New York
(212) 571-2000
Attorneys for Nicole White